UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTHONY CONTE,

               Plaintiff,

  - against -

ADVANTAGE SALES & MARKETING LLC,
CONNIE GERMOSO, STEPHANIE ST.
BERNARD, and ANDREW MIANO,

               Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-1426 (RRM) (AKT)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

    *Pro se* plaintiff Anthony Conte brings this action against his former employer, defendant Advantage Sales & Marketing LLC ("Advantage"), and three of its supervisors – defendants Connie Germoso, Stephanie St. Bernard, and Andrew Miano – alleging national origin discrimination and age discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*, as well as defamation and fraud in violation of New York State law. (Compl. (Doc. No. 1).) Defendants now move to stay the proceedings and compel arbitration or, in the alternative, to dismiss the complaint. (Motion to Compel Arbitration ("Mot.") (Doc. No. 18.)) For the reasons stated below, defendants' motion to stay the proceedings and compel arbitration is granted.

## BACKGROUND

    Conte began his employment as a customer development manager at Advantage in 2017. (Compl. at 5.)[1] His direct supervisors were Germoso and her assistants, St. Bernard and Miano. (*Id.*) Conte's responsibilities included selling products to store owners and managers, maintaining racks and displays, and reporting store compliance. (*Id.*) According to reports

---

[1] All page numbers correspond to ECF pagination.

issued by Germoso and St. Bernard, Conte's sales results exceeded those of most other team members. (*Id.* at 6.) Conte claims that during this time, he truthfully reported his sales results and store compliance. (*Id.*) To support his compliance results, Conte took hundreds of store call photographs. (*Id.*)

As a condition of his employment in 2017, Conte was presented with an arbitration agreement ("the 2017 Agreement") which set forth a dispute resolution process. (Declaration of Lisa M. Griffith in Support of Defendants' Motion to Stay Proceedings and Compel Arbitration or, in the Alternative, to Dismiss the Complaint ("Griffith Dec.") (Doc. No. 18-2), Ex. B.) That provision of the 2017 Agreement provided for final and binding arbitration of all claims, controversies, or disputes arising out of Conte's employment with Advantage. (*Id.*) Conte was asked to acknowledge that he received, read, and understood the mutual agreement to arbitrate claims. (*Id.* at 2.) On June 14, 2017 at 10:20 a.m., Conte accepted the terms of the 2017 Agreement by entering his internal username and password, clicking on a check box marked "Agree," and checking off another box marked "E-signature." (*Id.*)

Conte's complaint alleges that, during Conte's employment, he participated in team meetings and conference calls with Germoso, St. Bernard, and Miano in which he was referred to as the "old man." (Compl. at 5.) Conte claims that "the bulk" of the thirty-plus people on the team were young, Hispanic, spoke little English, and were mostly friends of Germoso and St. Bernard. (*Id.*) Conte alleges that many of the team meetings and conference calls were conducted in Spanish, a language Conte does not speak fluently. (*Id.*) Speaking Spanish was not a requirement for Conte's position. (*Id.* at 6.) In addition, Germoso and St. Bernard, who are both Hispanic, chose to hire and replace non-Hispanic team members with their Hispanic friends regardless of the candidate's qualifications. (*Id.* at 5.)

2

In March 2018, St. Bernard called Conte on behalf of Germoso and urged Conte to interview for a position elsewhere in the company. (*Id.* at 5.) Conte inquired about the position with a supervisor and was informed that the position was not a sales position, but rather involved manual labor. (*Id.*) Conte declined the position. (*Id.*)

Conte claims that Germoso, St. Bernard, and Miano subsequently created a hostile work environment by attacking his work and ability during conference calls. (*Id.*) Conte alleges that Germoso, St. Bernard, and Miano falsely accused him of not complying with company rules and stating that he falsified reporting entries for the period ending in March 2018. (*Id.*) Further, Conte claims that Germoso, St. Bernard, and Miano continued to make false accusations about him, both to him directly and to others, despite the fact that Conte provided Germoso, St. Bernard, and Miano with records and hundreds of saved store call photographs which demonstrated that their accusations were false. (*Id.* at 5–6.) Conte claims he was wrongfully terminated on April 20, 2018. (*Id.* at 6.) Conte alleges that after he was Germoso and St. Bernard replaced him with a young, Hispanic male, who was the boyfriend of Germoso. (*Id.*)

On July 5, 2018, Conte filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 7.) The EEOC issued a right-to-sue letter on December 12, 2018. (*Id.*) Conte timely filed this action on March 12, 2019, alleging discrimination on the basis of national origin in violation of Title VII, and on the basis of age in violation of the ADEA. (*Id.*) Specifically, Conte claims that he was subjected to a hostile work environment and wrongful termination because he was old, not Hispanic, and therefore "considered expendable." (*Id.* at 6.) Conte also alleges defamation and fraud in violation of New York State law. (*Id.* at 3.)

The Instant Action

      Defendants now move to stay this action and compel arbitration, or, in the alternative, to dismiss the complaint. (Doc. No. 18.) Appended to this motion, defendants submit two arbitration agreements: one dated June 12, 2016 ("2016 Agreement") and the other dated June 14, 2017 ("2017 Agreement"). (Griffith Dec., Exs. A & B.)[2] Defendants argue that these arbitration agreements, each containing Conte's electronic signature, demonstrate the existence of a valid arbitration agreement that covers all of Conte's claims, and so much be enforced. (Mot. at 10–11.) Defendants assert that the broad arbitration provision contained in the superseding 2017 Agreement, which covers "all claims or controversies that the Company [Advantage] may have against you, or that you may have against any of the following: (1) the Company; (2) its officers, directors, employees or agents in their capacity as such or otherwise…," creates a presumption of arbitrability that Conte cannot rebut. (*Id*. at 11–12.) Further, defendants argue that employment discrimination claims brought under federal anti-discrimination laws, as well as state law claims for defamation or fraud, are arbitrable under the Federal Arbitration Act ("FAA"). (*Id*. at 12–13.) Accordingly, defendants request that the instant action be stayed or dismissed during the pendency of the arbitration. (*Id*. at 13.)

      Conte argues in an opposition letter filed with the Court that he is subject to the employment exemption to the FAA, 9 U.S.C. §1, because his job at Advantage required him to regularly transport and deliver "thousands of displays and individual marketing goods and materials… to approximately three dozen supermarkets on Long Island, New York." (Response in Opposition ("Pl.'s Opp.") (Doc. No. 19) at 1.) These goods and materials, Conte argues, were delivered from out of state, and therefore Conte asserts that he regularly transported goods as

---

[2] Because Conte began his employment in 2017, it is unclear why he signed an arbitration agreement in mid-2016.

4

part of interstate commerce. (*Id*.) Conte also argues, in a motion inadvertently not filed with the Court, that a prior agreement he signed in 2016 requires that any modification to the at-will nature of plaintiff's employment be signed by the CEO of the company. (Letter in Response to Plaintiff's January 23 and 24 Letters to the Court Concerning Defendants' Motion (Doc. No. 22) at 4–7 ("January 23rd Letter"); same at 16–17 ("January 24th Letter").). Conte claims that because the 2017 Agreement was not signed by the CEO of Advantage, he could not validly agree to any of the terms provided in the 2017 Agreement. (*Id.*) Conte argues that the absence of the Advantage CEO's signature renders the 2017 Agreement invalid and thus does not bind him to any of the contents of the agreement, including arbitration. (*Id.*) Finally, Conte asserts that he cannot afford to proceed with arbitration, as evinced by his *in forma pauperis* status, and requests that he be allowed to proceed with litigation due to the prohibitive cost of arbitration. (Pl.'s Opp. at 2.)

In response, defendants assert that the FAA employment exemption is inapplicable here because the claims at issue do not relate to contracts of employment. (Defendants' Reply in Further Support of Motion to Compel Arbitration ("Defs.' Reply") (Doc. No. 21) at 6–7.) Defendants further assert that the exemption is inapplicable because Conte worked as a sales representative and did not engage in transporting goods interstate. (*Id*. at 7–8.) Defendants further assert that the FAA is applicable by agreement, if not by law, and that Conte's claims are also subject to arbitration under state law. (*Id*. at 8–11.) Finally, defendants maintain that Conte's request to proceed *in forma pauperis* is not grounds to deviate from the arbitration agreement, because the 2017 Agreement provides that arbitration be conducted in accordance with JAMS Employment Arbitration Rules, which limit fees imposed upon plaintiffs who were required to sign arbitration agreements as a condition of their employment. (*Id*. at 12.)

5

**STANDARD OF REVIEW**

The Federal Arbitration Act ("FAA") embodies the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) ("While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so.*'" (quoting *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003))). "The overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Court must evaluate a motion to compel arbitration pursuant to the FAA, 9 U.S.C. § 4, under a standard similar to the standard for a summary judgment motion. *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability."). Where a motion to compel arbitration "is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mazza Consulting Group, Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG) 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008).

**DISCUSSION**

I.    **Motion to Compel Arbitration**

In determining whether a claim should be arbitrated under the FAA, the Court must determine (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted, whether Congress intended those claims to be

6

nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *See JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)).

Here, Conte argues that the FAA does not govern the instant action, because his claims fall into the FAA employment exemption. Conte further disputes the first prong of the four-part test, claiming that defendants cannot demonstrate the existence of a valid arbitration agreement because, contrary to company policy, the CEO of Advantage did not sign it. Conte does not dispute that his claims fall within the scope of the 2017 Agreement, that his claims are of the type Congress intended to be arbitrable, or that the proceedings can be stayed.

a. Whether the FAA Employment Exemption Applies to the Instant Action

Conte's argument that he is exempt from the arbitration agreements at issue because the FAA employment exemption applies to the instant action is unavailing. The FAA employment exemption provides, "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S. C. § 1. This provision "exempts from the FAA only contracts of employment," *Circuit City Stores, Inc. v Adams*, 532 U.S. 105, 112 (2001), and is "limited to workers involved in the transportation industries," *Maryland Cas. Co. v. Realty Advistory Bd. On Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997). Conte worked as a sales representative who traveled to supermarkets throughout Long Island, New York. He did not cross state lines as part of this work. He does not provide evidence to support the assertion that he was a transportation worker or that he was engaged in interstate commerce. Therefore, the FAA employment exception does not apply.

### b. Whether the Parties Agreed to Arbitrate

"While there exists a strong federal policy favoring arbitration agreements and resolving 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration,' a court first must conclude that the parties intended to arbitrate in the first instance before the scope of arbitration may be defined." *Monisoff v. Am. Eagle Invs., Inc.*, No. 96-CV-7798, 1996 WL 708598, at *1 (2d Cir. Dec. 9, 1996) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). "The party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Tellium, Inc. v. Corning Inc.*, No. 03-CV-8487 (NRB), 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004). "Because an agreement to arbitrate is a creature of contract ... the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts.").

Here, defendants submit two arbitration agreements, both electronically signed by Conte, to demonstrate that Conte agreed to arbitration. Defendants assert that Conte agreed to arbitration in the 2016 Agreement and 2017 Agreement when he entered his internal username and password, clicked on a check box marked "Agree," and checked off another box marked "E-Signature." Conte does not dispute that he signed the 2016 Agreement or the 2017 Agreement. The Second Circuit has acknowledged that "courts around the country have recognized than [an] electronic 'click' can suffice to signify the acceptance of a contract." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir, 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016)). Further, "courts routinely uphold clickwrap agreements

8

for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer*, 868 F.3d at 75. Accordingly, defendants have met their burden to demonstrate the existence of an arbitration agreement.

Nevertheless, Conte argues that since the 2016 Agreement required that any modifications to the at-will nature of his employment be signed by the CEO of Advantage, the absence of the CEO's signature on the 2017 Agreement renders it invalid. Although the 2017 Agreement was not signed by the CEO, the 2017 Agreement did not provide for any modifications to the at-will nature of Conte's employment. Instead, the 2017 Agreement, like the 2016 Agreement, requires the parties to resolve all claims or controversies through binding arbitration. Conte's assertion that the 2017 Agreement is not valid because the CEO had not signed it, therefore, is meritless. Thus, the Court finds that defendants have demonstrated the existence of an arbitration agreement.

    c. **Plaintiff's *in forma pauperis* Status**

Conte argues that because he lacks the capacity to pay for arbitration, as demonstrated by his *in forma pauperis* status, he should be allowed to proceed with his litigation despite the existence of a binding arbitration agreement. This argument is also unavailing. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Reyes v. Gracefully, Inc.*, No. 17-CV-9328 (VEC), 2018 WL 2209486 at *7 (S.D.N.Y. May 11, 2018) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). Conte has not demonstrated that he is likely to incur prohibitive costs, and defendants present unrefuted evidence demonstrating that arbitration is likely to cost Conte little. As defendants highlight in their response, the 2017 Agreement provides that arbitration will be conducted in accordance

9

with JAMS Employment Arbitration Rules. (Defs.' Reply at 12; *see also* Griffith Dec. at 9.) JAMS Employment Arbitration Rule 31(c) states, "if an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the initial JAMS Case Management Fee." (*See* https://www.jamsadr.com/rules-employment-arbitration/english#thirty-one.) Further, because JAMS requires that "an employee's access to arbitration must not be precluded by the employee's inability to pay any costs," Conte may be eligible for a waiver of that fee if the cost would be prohibitive. (Defs.' Reply at 12 (*quoting* https://www.jamsadr.com/employment-minimum-standards).) Therefore, Conte has not demonstrated that he is likely to face prohibitive costs in arbitration, and so his argument must fail.

## II.     Request for Stay

Defendants have requested that this case be stayed pending arbitration. It is well settled in this Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Here, all of Conte's claims against defendants are referred to arbitration. Therefore, this Court stays this action pending arbitration.

The parties shall confer and submit a status report within thirty (30) days of the date of this Memorandum and Order that states whether the parties are able to agree upon an arbitrator. If the parties are unable to reach agreement, each party shall include a list of five (5) potential arbitrators in order of preference, with each proposed individual's qualifications. The Court will then select an arbitrator and so advise the parties.

## CONCLUSION

For the reasons set forth above, defendants' motion to compel arbitration and stay this action is granted.  The parties are ordered to arbitrate the case pursuant to the terms of the 2017 Agreement and consistent with this Memorandum and Order.

The Clerk of Court is respectfully requested to administratively close this case without prejudice to any party's right to reopen and/or lift the stay, if necessary, upon letter request filed with the Court within twenty-one (21) days of the disposition of the arbitration, or any event requiring the proceedings in the Court to resume.

SO ORDERED.

Dated: Brooklyn, New York
       September 28, 2020

*Roslynn R. Mauskopf*

_____

ROSLYNN R. MAUSKOPF
Chief United States District Judge